IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-259-D

| | | |
|---|---|---|
| SHERILYN D. YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ONSLOW WATER & SEWER AUTHORITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

On August 1, 2017, Onslow Water and Sewer Authority ("OWSA" or "defendant") moved for summary judgment concerning Sherilyn Young's ("Young" or "plaintiff") Title VII claims [D.E. 16] and filed a Local Rule 56.1 statement of undisputed material facts [D.E. 18]. On August 2, 2017, OWSA filed Joetta Guist's declaration [D.E. 20] and an amended memorandum of law [D.E. 21]. On August 25, 2017, Young filed an untimely response in opposition [D.E. 22].[1] As explained below, the court grants OWSA's motion for summary judgment.

I.

On August 9, 2004, OWSA hired Young, an African-American woman, as a Customer Service Representative ("CSR"). See Compl. [D.E. 1] ¶¶ 8–9. In 2008, Young applied for a promotion to Customer Account Specialist ("CAS"). See Young Dep. at 10 [D.E. 15-1]. OWSA

___

[1] Defendant's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a corresponding numbered paragraph in the opposing statement." Local Civil Rule 56.1(a)(2). Young did not file an opposing statement controverting defendant's statement of undisputed material facts. Thus, the statement is deemed admitted, and the court may rely on defendant's statement of undisputed material facts. Id.; United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113-D, 2017 WL 1030706, at *1 (E.D.N.C. Mar. 15, 2017) (unpublished).

selected Courtney Lynxweiler, a white female, for the position. See Young Dep. at 20–21. Shortly thereafter, Young filed a written grievance with OWSA management alleging race discrimination due to her non-selection for the CAS position. See id. at 13. Young received a pay increase as settlement for the grievance. See id. at 20.

In August 2014, a CAS position became available for the first time since 2008. See id. at 28. OWSA accepted applications only from internal candidates. See Guist Aff. ¶ 4 [D.E. 20]. A panel of five members of OWSA's management conducted interviews. See id. ¶ 6. The panel members were from different departments within OWSA, and none of the panel members were involved with Young's 2008 grievance. See id. ¶¶ 7, 13. The panel interviewed five candidates, including Young, and the interviews took place on the same day. See id. ¶¶ 8, 10. The candidates were asked the same questions, and the panel members individually graded the candidate's responses. See id. ¶ 8. The panel tallied the scores, and OWSA offered the position to the candidate with the highest score, Lisa Kaczmarski. See id. ¶¶ 8–10. Based on her scores, Young was ranked fourth. See id. ¶ 10. On December 2, 2014, Young filed an EEOC charge alleging that OWSA discriminated against her based on her race when it did not promote her to the CAS position. See Def. Exs. [D.E. 15-2] 32.

Approximately three months after OWSA promoted Kaczmarski, Kaczmarski left OWSA due to her husband's job relocation. See Guist Aff. ¶ 11. OWSA again posted the CAS job opening, however, this time both internal and external candidates could apply. See id. Several candidates applied for the position, including candidates who had received higher scores than Young during the prior selection process. See id. ¶ 12. OWSA did not interview Young because she had a recent disciplinary action, and per OWSA policy, employees who had formal disciplinary actions in the past twelve months were not eligible to apply for open positions. See Def. Exs. at 20–21; [D.E. 22] 2. In January 2015, OWSA selected Jason Glasper, an African-American male and external applicant,

2

for the position. See Guist Aff. ¶ 12. On September 15, 2015, Young filed an amended EEOC charge alleging retaliation. See Def. Exs. at 32. Young contends that OWSA did not promote her in January 2015 in retaliation for filing her December 2014 EEOC charge. See Compl. ¶¶ 15–16. Young also contends that OWSA retaliated against her in February 2015 by moving her to the front desk and a new cubicle. See id. ¶ 17.

II.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the non-movant and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially demonstrate an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the movant meets its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Nor will a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . ; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson,

3

477 U.S. at 252. In evaluating material submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay). See Fed. R. Civ. P. 56(c)(4); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

A.

Title VII prohibits employers from failing to promote an individual "because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish such a Title VII violation in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an employer's adverse employment action. Alternatively, a plaintiff may proceed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

Direct evidence is evidence from which no inference is required. To show race discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. See id. at 286–91. Such direct evidence would include a decisionmaker's statement that he did not promote plaintiff due to her race. See id. at 303. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151–52 (2000); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012).

Young lacks direct evidence of race discrimination, and instead relies on the McDonnell Douglas framework. Under this framework, a plaintiff must first establish a prima facie case of discrimination. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of

4

Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse employment action "for a legitimate, nondiscriminatory reason." Burdine, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 256; King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003).

To establish a prima facie case of failure to promote based on race, a plaintiff must show (1) that she belongs to a protected class; (2) that she applied for the position at issue; (3) that she was qualified for that job; and (4) that the defendant rejected her application under circumstances supporting an inference of unlawful discrimination. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 n.6 (4th Cir. 2005). An African-American female may prove the fourth element by showing that the employer rejected her application for promotion and filled the job with a white person. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994).

Young alleges that OWSA discriminated against her based on race when it promoted Kaczmarski in August 2014 to the CAS position. See Compl. ¶¶ 12–14. The court assumes, without deciding, that Young established a prima facie case. Thus, the burden shifts to OWSA to provide a legitimate, non-discriminatory reason for promoting Kaczmarski over Young. A defendant's burden of providing a legitimate, non-discriminatory reason is one of production, not persuasion. St. Mary's Honor Ctr., 509 U.S. at 509. A defendant must present its legitimate, non-discriminatory reason "with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Burdine, 450 U.S. at 255–56. For example, an employer's good faith belief that another

5

candidate is better qualified due to that employee's job performance and experience is a legitimate, non-discriminatory reason for an adverse employment decision. See, e.g., Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006); Diamond, 416 F.3d at 319; Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 189 (4th Cir. 2004); Evans, 80 F.3d at 960.

OWSA promoted Kaczmarski because she received the highest score based on the tallied scores from a five-member interview panel. See Guist Aff. ¶¶ 8–10. This reason is a legitimate, non-discriminatory reason for promoting Kaczmarski over Young. See, e.g., Evans, 80 F.3d at 960. Accordingly, OWSA has met its burden of production. See id. Thus, the burden shifts back to Young to demonstrate that OWSA's non-discriminatory reason is a pretext for race discrimination. See, e.g., Hux v. City of Newport News, 451 F.3d 311, 314–15 (4th Cir. 2006).

A plaintiff can demonstrate pretext by showing that the alleged non-discriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted). In conducting this analysis, the court does not sit to decide whether the defendant in fact discriminated against the plaintiff based on race. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. Pepsico, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the court focuses on whether plaintiff has raised a genuine issue of material fact as to pretext within the meaning of Reeves and its Fourth Circuit progeny. See, e.g., Hux, 451 F.3d at 314–19; Dugan v. Albemarle Cty. Sch. Bd., 293 F.3d 716, 722 (4th Cir. 2002).

When determining whether a plaintiff has sufficiently demonstrated the falsity of an employer's proffered justification, courts must recognize that an "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Burdine, 450 U.S. at 259; see Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998); Amirmokri v.

6

Baltimore Gas & Elec. Co., 60 F.3d 1126, 1130 (4th Cir. 1995); Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 909–11 (4th Cir. 1989).

In asserting that OWSA's reason is pretextual, Young first argues that she was more qualified than Kaczmarski. See Compl. ¶ 13; Young Dep. at 28–29. If a plaintiff makes a strong showing that she was "discernibly better qualified" than the candidate selected for a promotion, a plaintiff may have successfully raised a genuine issue of material fact as to whether the employer's proffered justification for promoting the successful applicant is pretextual. See Heiko, 434 F.3d at 261–62. But "[w]hen a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." Id. at 261; see Hux, 451 F.3d at 314–19; Causey, 162 F.3d at 801.

Young bases her argument concerning her superior qualifications on her longevity with OWSA and her favorable performance reviews. See Young Dep. at 28–29, 57–58; [D.E. 22] 1–2. Young's tenure with OWSA, however, does not make her discernibly better qualified than Kaczmarski. See, e.g., Hall v. Forest River, Inc., 536 F.3d 615, 620 (7th Cir. 2008); Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996); Locklear v. Sealey, No. 7:10–CV–121–FL, 2012 WL 1858931, at *5–6 (E.D.N.C. 2012) (unpublished). An employer may consider a host of non-discriminatory factors in deciding which candidate to promote. Young did not present any evidence "that longevity equates to superior qualifications," or that OWSA "promotes on a basis of seniority." Hall, 536 F.3d at 620; see Nichols, 81 F.3d at 42; Sealey, 2012 WL 1858931, at *6. Moreover, Young's self-evaluation of her performance and qualifications does not alter this conclusion. See, e.g., Evans, 80 F.3d at 960; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 607 (E.D.N.C. 2006). Accordingly, Young

7

has not raised a genuine issue of material fact concerning whether she was discernibly better qualified than Kaczmarski.

Young also argues that OWSA preselected Kaczmarski for the position because a member of the interview panel was a personal friend of Kaczmarski. See Young Dep. at 31–32; [D.E. 22] 3. However, "[t]he argument that a supervisor may have preselected an employee for promotion is not sufficient evidence for jurors reasonably to conclude" that OWSA's explanation for promoting Kaczmarski was pretext. Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 271 (4th Cir. 2005) (quotation omitted); see Mackey v. Shalala, 360 F.3d 463, 468–69 (4th Cir. 2004). Moreover, if a member of the panel was influenced by a friendship with Kaczmarski, such influence would harm all applicants equally. See, e.g., Blue v. United States Dep't of the Army, 914 F.2d 525, 541 (4th Cir.1990). Even viewing the evidence in the light most favorable to Young, Young's pretext argument fails. Thus, the court grants summary judgment to OWSA on Young's failure-to-promote claim.

B.

As for Young's retaliation claim, under Title VII, a plaintiff must file an EEOC charge within 180 days of each discrete adverse employment action described in the complaint. See, e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109–15 (2002); EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110 (1988); Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004); Barcliff v. N.C. League of Municipalities, No. 5:10–CV–244–D, 2011 WL 3290578, at *2 (E.D.N.C. Aug. 1, 2011) (unpublished). Generally, each adverse employment action "starts a new clock" for filing an EEOC charge concerning that action. White v. Tire Centers, LLC, No. 3:13–cv–2–GCM, 2013 WL 1146255, at *3 (W.D.N.C. Mar. 19, 2013) (unpublished); see Morgan, 536 U.S. at 114.

8

Generally, "only incidents that took place within the timely filing period are actionable." Morgan, 536 U.S. at 114.

Young has no direct evidence of retaliation and relies on the McDonnell Douglas framework. Under McDonnell Douglas, a plaintiff must first establish a prima facie case of retaliation. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506; Burdine, 450 U.S. at 252–55; Holland, 487 F.3d at 218; Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took an action against her that a reasonable employee would find materially adverse; and, (3) the employer took the materially adverse employment action because of the protected activity. See, e.g., Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 271 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); Holland, 487 F.3d at 218; Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs, 242 F.3d at 190; see also Burlington N. & Sante Fe Ry. v. White, 548 U.S. 53, 67–70 (2006). A plaintiff establishes a materially adverse employment action if the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68 (quotation omitted). However, "petty slights, minor annoyances, and simple lack of good manners" are insufficient to sustain a retaliation claim. Id.

On December 2, 2014, Young filed an EEOC charge alleging race discrimination due to her non-promotion in September 2014. See Compl. ¶¶ 12–14; Def. Exs. at 32. On January 31, 2015, Young amended her charge to include information about a written warning she received some time after she applied for the CAS position in September 2014. See Def. Exs. at 22. On September 15, 2015, Young filed an amended EEOC charge alleging race discrimination and retaliation. See id. at

9

31–33. In this amended charge, Young contends that OWSA retaliated against her on January 15, 2015, when OWSA did not promote her to the CAS position that Kaczmarski vacated. See Compl. ¶¶ 15–16; Def. Exs. at 32. Young also contends that OWSA retaliated against her in February 2015 when "she was moved to a work space designated for entry level job duties to include working the front counter." Compl. ¶ 17; see Def. Exs. at 32–33.

As for Young's claim that OWSA retaliated against her in February 2015 by moving her to the front desk and a new cubicle, this claim is untimely. The allegation constitutes a "separate actionable unlawful employment practice," and Young was required to file a new EEOC charge concerning this conduct. See, e.g., Morgan, 536 U.S. at 114 (quotation omitted). Young, however, did not file a new charge concerning this conduct until September 15, 2015. Thus, she filed the claim outside the 180-day period. See, e.g., id. at 122; McDougal–Wilson, 427 F. Supp. 2d at 606 n.3.

Alternatively, even if timely, Young merely alleges that she was moved from a back office to a work space designated for entry level job duties. See Compl. ¶ 17; Young Dep. at 64, 66. Young cites nothing concerning the work at the front desk that a reasonable employee would find materially adverse. See Burlington N. & Santa Fe Ry., 548 U.S. at 68–69; Cherry v. Elizabeth City State Univ., 147 F. Supp. 3d 414, 426 (E.D.N.C. 2015). Indeed, Young admits that OWSA rotates its CSRs, and placement at the front desk is part of the rotation. See Young Dep. at 66–67. Young also admits that more senior CSRs were rotated. Id. at 66. Although moving to the front desk and a new cubicle may have been annoying, it falls short of conduct that would dissuade a reasonable worker from engaging in protected activity. Accordingly, Young's retaliation claim concerning the move to the front desk and a new cubicle fails.

As for Young's retaliation claim concerning her non-promotion to the CAS position in January 2015, the court questions whether this claim was timely. As noted, Young filed her amended EEOC charge on September 15, 2015. See Def. Exs. at 31–33. Nonetheless, some evidence in the record suggests that Young informed the EEOC of the January 2015 non-promotion on January 31, 2015. See id. at 22.

Assuming the claim was timely and viewing the record in the light most favorable to Young, Young has failed to raise a genuine issue of material fact concerning pretext. Although Young engaged in protected activity when she filed her discrimination charge in December 2014, OWSA provided legitimate non-discriminatory reasons for not promoting Young to the January 2015 CAS job. OWSA did not interview Young for the position because she had a recent disciplinary action, and per OWSA policy, employees who had formal disciplinary actions in the past twelve months were not eligible to apply for open positions. See Def. Exs. at 20–21; [D.E. 22] 2. Moreover, several candidates who scored higher than Young during the first interview panel applied for the position, and OWSA selected Glasper as the most qualified applicant. See [D.E. 18] ¶ 14. Thus, OWSA contends that Young has not raised a genuine issue of material fact concerning pretext.

Young bears the burden to show OWSA's explanation is pretextual. See, e.g., Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 210–13 (4th Cir. 2014); Laing v. Fed. Express Corp., 703 F.3d 713, 721–23 (4th Cir. 2013). Young, however, has failed to offer any evidence concerning this issue. See [D.E. 22]. Accordingly, the court grants the OWSA's motion for summary judgment on Young's Title VII retaliation claim.

### III.

In sum, defendant's motion for summary judgment [D.E. 16] is GRANTED. Defendant may file a motion for costs in accordance with the Federal Rule of Civil Procedure and this court's local

11

rules. The clerk shall close the case.

SO ORDERED. This 12 day of January 2018.

                                                          JAMES C. DEVER III
                                                          Chief United States District Judge